O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KYM D. MOORE,** | ) NO. CV 09-499-MAN |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION |
| v. | ) |
| | ) AND ORDER |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| Defendant. | ) |

Plaintiff filed a Complaint on January 27, 2009, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for supplemental security income ("SSI"). On March 10, 2009, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on September 11, 2009, in which: plaintiff seeks an order reversing the Commissioner's decision remanding the matter for further administrative proceedings; and defendant seeks an order affirming the Commissioner's decision. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On September 21, 2005, plaintiff filed an application for SSI, alleging an inability to work since August 1, 2001, due to thoracic outlet syndrome,[1] carpal tunnel syndrome, tendonitis, depression, and post-traumatic stress syndrome. (Administrative Record ("A.R.") 58-63, 82, 85-86.) Plaintiff has past relevant work experience as a secretary and a clerical assistant. (A.R. 20, 75, 86.)

The Commissioner denied plaintiff's application initially (A.R. 50-54), and on August 29, 2007, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Charles L. Hall ("ALJ"). (A.R. 346-73.) On October 10, 2007, the ALJ denied plaintiff's application (A.R. 16-21), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 4-6).

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff has not engaged in substantial gainful activity since September 21, 2005, her application date. (A.R. 17.) The ALJ determined that plaintiff has "severe" bilateral carpal tunnel syndrome, but she does not have any impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 17-18.) The ALJ found that plaintiff does not have a "severe" mental impairment. (A.R.

---

[1] Thoracic outlet syndrome is "a condition presenting with arm complaint of pain, numbness, tingling and weakness. The cause is pressure in the neck against the nerves and blood vessels that go to the arm." Http://www.webmd.com

18.)

The ALJ concluded that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms about which plaintiff complained, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are "not entirely credible." (A.R. 19-20.) The ALJ determined that plaintiff is capable of performing her past relevant work as a secretary and clerical assistant. (A.R. 20.)

Accordingly, the ALJ found that plaintiff has not been under a disability, as defined in the Social Security Act, since September 21, 2005, the date her application was filed. (A.R. 21.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following three issues: (1) whether the ALJ erred in finding that her only severe impairment is bilateral carpal tunnel syndrome; (2) whether the ALJ erred in finding that plaintiff's

4

mental impairment is not severe; and (3) whether the ALJ properly weighed plaintiff's testimony and made proper credibility findings. (Joint Stipulation ("Joint Stip.") at 3.)  Plaintiff's first two issues are addressed together below.

**I.    The ALJ's Finding That Plaintiff Suffers From Only One "Severe" Impairment Was Improperly Made.**

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on [a claimant's] ability to work.'" Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)(citing Social Security Ruling 85-28 and Yuckert v. Bowen, 841 F.2d 303 (9th Cir. 1988)); 20 C.F.R. § 416.921 ("[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); *see also* Bustamante v. Massanari, 262 F.3d 949, 955-56 (9th Cir. 2001)(ALJ's finding that claimant's mental impairment was not severe was not supported by substantial evidence, because every mental health professional who examined claimant found significant mental problems). The "severity" requirement is merely "a *de minimis* screening device to dispose of groundless claims." Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)(citing Smolen, 80 F.3d at 1290).  "[A] claim may be denied at step two only if . . . a finding [that the relevant impairments are not medically severe] is *clearly established by medical evidence*." Social Security Ruling 85-28 (emphasis added).

A.   *Plaintiff's Physical Impairments Of The Neck and Shoulder*

The ALJ found that plaintiff suffered from only one "severe" physical impairment, bilateral carpal tunnel syndrome. (A.R. 17.) Plaintiff contends that substantial evidence of record supports plaintiff's claim that she also suffers from a "severe" neck and shoulder impairment. (Joint Stip. at 4.)

The record demonstrates that, in January 2001, plaintiff was examined by Eric Hsu, M.D., at UCLA Medical Center, for complaints of pain in her neck, shoulder, right hand, and finger. (A.R. 107.) Upon examination, Dr. Hsu found decreased range of motion in plaintiff's neck with tenderness on palpation over the paravertebral region on C4-5 and C6. (A.R. 107-08.) Dr. Hsu opined that plaintiff has "clinical presentation of thoracic outlet syndrome," and "may benefit from trigger point injection over the neck and shoulder region." (A.R. 107.) In April 2001, plaintiff was again examined by Dr. Hsu, who noted decreased neck range of motion on flexion, extension, and lateral rotation. (A.R. 105.) Dr. Hsu opined that plaintiff "may benefit from cervical epidural steroid injection under fluoroscopy guidance," "physical therapy," and "acupuncture." (*Id.*) Plaintiff followed Dr. Hsu's recommendations and underwent a series of cervical epidural injections, which offered temporary relief, but plaintiff reported that, in September 2001, her shoulder pain was a 9 on a scale of 1 to 10, with 10 being the highest level of pain. (A.R. 100.) In January 2002, Dr. Hsu again examined plaintiff and found that she continued to have tenderness and decreased range of motion in her neck and right shoulder. (A.R. 95.) Plaintiff was diagnosed with right rotator cuff tendinitis. (*Id.*)

6

1   In July 2003, plaintiff was examined by Amy Akers, M.D., at UCLA
2 Neurological Services, for right upper extremity pain. (A.R. 320.)
3 Upon physical examination, Dr. Akers ruled out thoracic outlet syndrome,
4 but recommended that plaintiff undergo an EMG and Nerve Conduction
5 Study, so that "any contribution of thoracic outlet syndrome can be
6 assessed" and plaintiff "can also be evaluated for cervical
7 radiculopathy." (A.R. 322.) It is unclear from a review of the record
8 whether plaintiff underwent the EMG and Nerve Conduction Study.

10   In October 2003, plaintiff underwent an MRI of her right shoulder.
11 (A.R. 234.) Plaintiff's films indicated "[d]istal supraspinatus tendon
12 thickening and abnormal signal intensity, consistent with tendinopathy"
13 and "mild acromiclavicular joint osteoarthritis." (A.R. 234-35.)

15   At the administrative hearing, medical expert Alan Frank, M.D.,
16 testified that plaintiff has two physical conditions: carpal tunnel
17 syndrome in both hands and "a problem involv[ing] her neck and shoulder,
18 her right shoulder." (A.R. 363.) Dr. Frank testified that plaintiff
19 "does have persistent pain in her neck, traveling into her -- into the
20 back of her right shoulder, and into the -- and onto her upper right
21 arm." (A.R. 364.)

23   In his decision, the ALJ failed to discuss any evidence pertaining
24 to plaintiff's neck and shoulder pain. Although the ALJ was not
25 required to identify every piece of evidence, he had a duty to summarize
26 and weigh the significant, relevant evidence regarding plaintiff's neck
27 and shoulder pain and to provide a rationale for his finding that
28 plaintiff has no severe neck and/or shoulder impairment. The ALJ's

failure to do so here constitutes error.

    B.    *Plaintiff's Mental Impairments: Depression and Post-Traumatic Stress Disorder* ("PTSD")

The ALJ found that "[plaintiff's] depression is a non-severe impairment." (A.R. 18.) In describing the evidence pertaining to plaintiff's claimed depression, the ALJ stated that: "mental health treatment records are sparse and consist primarily of non-specialist reports of prescribed anti-depressant medication. There is no longitudinal record of mental health therapy and treatment from a psychiatrist. Likewise, there is no record of individualized treatment or group therapy at any mental healthcare facility." (*Id.*) However, the ALJ did not address plaintiff's claimed PTSD at all and inadequately addressed plaintiff's depression.

The ALJ's brief discussion of the evidence pertaining to plaintiff's depression does not fairly address this claimed impairment. Medical records from the UCLA Family Health Center establish that plaintiff's depression began in 2001, as a result of witnessing her son being robbed and shot five times in their home. (A.R. 115, 177-181.) Plaintiff was prescribed anti-depressants, including Zoloft and Paxil. (*Id.*) Subsequent to her son's shooting, plaintiff was treated by psychiatrist Anita E. Gray, M.D., who diagnosed plaintiff with "Major Depression." (A.R. 340.) In November 2002, plaintiff underwent a consultative psychiatric examination with Norma Aguilar, M.D., who

diagnosed plaintiff with dysthymia,[2] mild, and PTSD. (A.R. 117.) Critically, Dr. Aguilar opined that plaintiff would have mild to moderate difficulty maintaining persistence and pace in a normal workplace setting. (*Id.*) In 2003, plaintiff was prescribed Effexor for her depression and referred for psychological counseling. (A.R. 167.) In June 2004, plaintiff's physician increased her dose of Effexor and opined that plaintiff's anxiety and depression were uncontrolled. (A.R. 160-61.) In August 2004, plaintiff's physician noted that plaintiff had a decreased libido with a lack of concentration and anhedonia.[3] (A.R. 160.) In March 2006, plaintiff complained of "feeling terrible, very depressed, sad, [and she] contemplated suicide." (A.R. 296.) Plaintiff was prescribed Wellbutrin. (A.R. 297.)

At the administrative hearing, the medical expert, psychiatrist Jack Rothberg, M.D., testified that plaintiff has two mental impairments: depression, which was mild; and PTSD of a mild to moderate level and which falls into the anxiety category. (A.R. 366.) Dr. Rothberg reviewed plaintiff's medical records and confirmed that plaintiff was taking, and had been taking for quite some time, several anti-depressant and anti-anxiety medications. (A.R. 367-68.) When asked to consider Dr. Gray's diagnosis of "Major Depression," Dr. Rothberg did not disagree with that diagnosis. (A.R. 340, 368-69.)

---

[2] Dysthymia is a "psychological disorder characterized by a chronic but mild depressive state that has been present in an individual for more than two years." Http:www.webmd.com.

[3] Anhedonia is a symptom of depression characterized by a "markedly diminished interest or pleasure in almost all activities nearly every day." Http:www.webmd.com.

Case 2:09-cv-00499-MAN   Document 18   Filed 08/10/10   Page 10 of 15   Page ID #:68

Consistently with Dr. Rothberg's testimony and her medical records, plaintiff testified that, as of the date of the hearing, she was being treated for depression and PTSD at UCLA. (A.R. 354-55.) She testified that, despite taking Wellbutrin and Paxil, she still experiences nightmares, is "very inward now," and does not associate with people outside of her family. (A.R. 355-56.)

In sum, the record as a whole, including the records from UCLA, the letter from Dr. Gray, Dr. Aguilar's consultative report, and the medical expert's testimony, strongly suggest that plaintiff's mental impairments would have "more than a minimal" effect on her ability to function in the work place. Smolen, 80 F.3d at 1290; Social Security Ruling 85-28. The ALJ's failure to address plaintiff's PTSD and to consider her depression adequately constitute reversible error.

**II.   The ALJ Failed To Evaluate Plaintiff's Credibility Properly.**

The law is well-settled that, once a disability claimant produces evidence of an underlying impairment that is reasonably likely to be the source of her subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 2001)(*en banc*); *see also* 20 C.F.R. § 416.929(a) (explaining how pain and other symptoms are evaluated). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's subjective symptom testimony must be "clear and convincing." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Further, the ALJ's credibility findings must be "sufficiently specific"

to allow a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa, 367 F.3d at 885.

Both in her filings with the Commissioner and in her testimony, plaintiff described various subjective symptoms from which she claims to suffer. Plaintiff complained of numbness and tingling in her hands and wrists and problems moving her neck, because her neck "pops a lot." (A.R. 68, 360.) Plaintiff also complained of significant pain in her right neck and shoulder, which radiates down into her hands. (A.R. 320.) Plaintiff stated that she feels as though her "bones are rubbing together around the right shoulder." (Id.) At the hearing, plaintiff testified that she stopped working due to weakness, tingling, and pain in her hands. (A.R. 350.) She testified further that she underwent surgery on her right hand and endured "a lot" of injections in her left hand, which provided temporary relief, but that the weakness, tingling, and pain in her hands and wrists returned. (A.R. 351-52, 359.) Plaintiff testified that she: does not drive; requires assistance with household chores; and often drops glasses and plates, because she "can't hold on to [them]." (A.R. 352, 360.) Plaintiff also testified that she takes medication for depression and post-traumatic stress, which she developed as a result of witnessing her son being robbed and shot in 2001, and she is treated at UCLA for those conditions. (A.R. 355.)

In his decision, the ALJ briefly summarized portions of plaintiff's testimony and found that plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (A.R. 20.) However, the ALJ concluded that plaintiff's "statements concerning

the intensity, persistence and limiting effects of these symptoms are not entirely credible." (*Id.*) The reasons the ALJ cites in reaching his adverse credibility determination, to the extent they are discernable, do not withstand scrutiny.

The ALJ's entire "analysis" of plaintiff's credibility is as follows:

> There was [*sic*] no laboratory or clinical findings to support the severity of the restrictions alleged. Also, there was no demonstrated medical pathology documented anywhere in the record which would substantiate restricting the residual functional capacity greater than that found herein. Further, limited activities of daily living are not attributable to a medical condition.

(A.R. 20.)

First, the ALJ's brief three-sentence credibility "analysis" falls woefully short of the "clear and convincing" standard contemplated by Ninth Circuit precedent. The ALJ's articulated reasons for rejecting plaintiff's subjective symptom testimony are neither clear nor convincing. Second, the ALJ's vague assertion that plaintiff's "limited activities of daily living are not attributable to a medical condition," is unclear and not "sufficiently specific" to allow a reviewing court to conclude that the ALJ rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit her testimony. *See* Moisa, 367 F.3d at 885. Finally, the ALJ's reliance on the lack of objective

medical evidence to support the degree of pain alleged, as a basis for finding plaintiff's testimony regarding her subjective symptoms not credible, is misplaced, as the absence of objective medical evidence cannot be the sole basis for rejecting a plaintiff's credibility, and the ALJ failed to set forth any other clear and convincing reasons for rejecting plaintiff's credibility. Fair v. Bowen, 885 F.2d 597, 601-02 (9th Cir. 1989); Stewart v. Sullivan, 881 F.2d 740, 743-44 (9th Cir. 1989).

Accordingly, the ALJ's adverse credibility finding, without setting forth clear and convincing reasons for his rejection of plaintiff's credibility, constitutes reversible error.

**III. Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record). Specifically, on remand, the ALJ must: (1) address plaintiff's neck and shoulder impairments and plaintiff's mental impairments, including her depression and PTSD; and (2) provide reasons, if they exist and are in accordance with the requisite legal standards, for discrediting plaintiff's pain testimony. Further, the ALJ must consider the impact of all of plaintiff's impairments, whether "severe" or not, on her ability to engage in and sustain full-time work. *See* Erickson v. Shalala, 9 F.3d 813, 817 (9th Cir. 1993)(ALJ must consider "all factors" that might have a significant impact on claimant's ability to work); *see also* 20 C.F.R. § 404.1545(e) ("we will consider the limiting effects of all your impairment(s), even those that are not severe").

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

///
///
///
///
///

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 10, 2010

*Margaret A. Nagle*
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE